**MAGIC WAND, INC., Appellant,**

v.

**RDB, INC., Appellee.**

No. 90–1512.

United States Court of Appeals, Federal Circuit.

July 30, 1991.

Susan B. Flohr, of Lalos & Keegan, Washington, D.C., argued for appellant. With her on the brief was Peter N. Lalos.

J. Triplett Mackintosh, of Coudert Brothers, Washington, D.C., argued for appellee. With him on the brief were Milo G. Coerper and Robert A. Lipstein.

Before ARCHER, MICHEL and RADER, Circuit Judges.

RADER, Circuit Judge.

Magic Wand, Inc. petitioned the United States Patent and Trademark Office's Trademark Trial and Appeal Board (TTAB) to cancel the registration of the service mark TOUCHLESS for "automobile washing services." The TTAB denied the petition. *Magic Wand, Inc. v. RDB, Inc.*, Cancellation No. 16,878 (TTAB Aug. 7, 1990). Because Magic Wand did not show that TOUCHLESS was generic in the mind of the relevant public, this court affirms.

### Background

Hot Springs Auto Wash Corporation of America obtained Registration No. 1,394,-353 for the TOUCHLESS mark in 1986. Later Hot Springs assigned the registration to appellee RDB, Inc. Magic Wand and RDB both manufacture automatic automobile washing systems. Their systems clean cars without brushes, cloths, or brooms contacting the car body. Instead chemicals and high-pressure water clean the vehicle.

Of the estimated 22,000 car washes in the United States, about 1,750 use this cleaning method. Twelve to fifteen companies manufacture these brushless car washes for drive-in bays. Another ten to twelve companies manufacture these chemical wash systems for conveyorized tunnel units. Some companies supply brushless technology for both kinds of automatic car wash.

Since 1983, RDB (or its predecessor) has used the TOUCHLESS service mark to identify its chemical washing system. In seeking cancellation, Magic Wand contended that TOUCHLESS had become the generic name for both chemical washing services and chemical washing equipment.

Magic Wand presented evidence that car wash manufacturers and dealers use the term generically in trade articles and advertisements. Magic Wand presented articles from the trade publications *Professional Carwashing and Detailing*, *Professional Carwashing*, *American Clean Car*, *Auto Laundry News*, and *Self–Service Car Wash News*. Further, the parties stipulated that 150 car washes owned or operated by Super Wash, Inc., without RDB's authorization, displayed the term TOUCHLESS over one of the car wash bays. Magic Wand presented no consumer surveys, consumer affidavits, or other evidence showing generic use or understanding by vehicle owners who purchase washing services.

The TTAB denied Magic Wand's petition. Magic Wand did not convince the TTAB that the relevant purchasing public, namely automobile owners and operators, considered the term TOUCHLESS generic for a type of automobile washing service. According to the TTAB, Magic Wand's evidence, at most, addressed the usage of operators and manufacturers of car washing equipment, not the relevant purchasing public.

### Discussion

Section 1064(3) of Title 15, United States Code, permits a party to petition for cancellation of a registration for a trademark that has become generic. 15 U.S.C. § 1064(3) (1988). Because determinations of genericness depend upon facts, this court must accept the TTAB's findings unless clearly erroneous. *In re Advertising & Marketing Dev., Inc.*, 821 F.2d 614, 621, 2 USPQ2d 2010, 2015 (Fed.Cir.1987).

■ The TTAB determined that Magic Wand had not shown that TOUCHLESS had become generic in the minds of the relevant purchasing public. In reaching that conclusion, the TTAB limited its inquiry to automobile washing services, not washing equipment. Therefore, the TTAB found that Magic Wand's evidence did not reveal how purchasers of automobile washing services, namely owners and operators of automobiles, understood the term.

The description in the registration certificate identifies the services in connection with which the registrant uses the mark. The Lanham Act permits cancellation when a "registered mark becomes the generic name for the goods or services ... for which it is registered...." 15 U.S.C. § 1064(3). Thus, a proper genericness inquiry focuses on the description of services set forth in the certificate of registration. *Octocom Sys., Inc. v. Houston Computer Servs., Inc.*, 918 F.2d 937, 942, 16 USPQ2d 1783, 1787 (Fed.Cir.1990).

■ According to the registration, the mark TOUCHLESS is used in connection with automobile washing services. The TTAB appropriately considered evidence about the meaning of TOUCHLESS in the minds of the relevant public for automobile washing services. The TTAB properly based its genericness analysis on the description of services in the registration.

■ The Trademark Clarification Act of 1984 (1984 amendment) set forth the test for genericness:

> The primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used.

15 U.S.C. § 1064(3). This 1984 amendment codified the time-honored test for genericness articulated by Judge Learned Hand in *Bayer Co. v. United Drug Co.*, 272 F. 505 (S.D.N.Y.1921): "What do the buyers understand by the word for whose use the parties are contending?". *Id.* at 509.

The 1984 amendment makes the understanding of the "relevant public" central to the genericness inquiry. By the words "relevant public" for a product sold in the marketplace, the Clarification Act means the relevant public which does or may purchase the goods or services in the marketplace. This meaning is evident from the context and history of the 1984 amendment.

The language of the 1984 amendment juxtaposes the "primary significance of the registered mark to the relevant public" and "purchaser motivation" tests. The amendment endorses the former and rejects the latter. The juxtaposition nonetheless suggests that both tests consider the impact of the mark on the same target group—purchasers.

The history of the 1984 amendment makes this meaning clear. Congress enacted the 1984 amendment to repudiate a new judicial doctrine which deviated from Judge Learned Hand's traditional formulation of the genericness standard. This new test for genericness centered on the motivation rather than the understanding of purchasers. *See Anti–Monopoly, Inc. v. General Mills Fun Group, Inc.*, 684 F.2d 1316 (9th Cir.1982). The 1984 amendment restored and codified the traditional purchaser understanding test. The original sponsor of the legislation, Senator Hatch, stated:

> The bill is not intended to effect important substantive changes in the mainstream of trademark law. Thus its purpose remains primarily that of clarifying and rendering more precise in the statute what the law is today an[d] should be in the years to come, undisturbed and undiverted by the troubling and potentially dangerous elements of the Anti–Monopoly case.

129 Cong.Rec. 28,866 (1983). The sponsor of the House counterpart legislation, Congressman Kastenmeier, agreed:

> [The 1984 amendment] does not propose a new genericness standard, but returns to the basic test....

130 Cong.Rec. 28,077 (1984).

The Senate report on the Trademark Clarification Act of 1984 stated:

[T]he Committee concludes that it is necessary to clarify and reaffirm that the test of genericism is whether the relevant consuming public perceives a mark as an indication of source.

S.Rep. No. 627, 98th Cong., 2d Sess. 9–10 (1984). The legislative history of the 1984 amendment repeatedly clarifies that the relevant public for a genericness determination is the purchasing or consuming public. *See, e.g., Trademark Clarification Act, 1984: Hearing on S.1990 before the Subcommittee on Patents, Copyrights, and Trademarks of the Senate Judiciary Committee*, 98th Cong., 2d Sess. 7, 8–9, 19–20 (1984) (statements of Sen. Leahy, Commissioner Mossinghoff, and Mr. Grow); *Trademark Reform Act, 1983: Hearing on H.R.4460 before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Judiciary Committee*, 98th Cong., 2d Sess. 4–5 (1984) (statement of Judge, now Chief Judge, Nies). In sum, the 1984 amendment makes the test for genericness the primary significance of the mark to the relevant public limited to actual or potential purchasers of the goods or services.

■ The precedents of this court both before and after the 1984 Act have consistently applied the traditional purchaser understanding test. For example, this court has stated that whether a term is entitled to trademark status turns on how the mark is understood by the purchasing public. *In re Montrachet S.A.*, 878 F.2d 375, 376, 11 USPQ2d 1393, 1394 (Fed.Cir. 1989). *See also, In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 1570, 4 USPQ2d 1141, 1143 (Fed.Cir. 1987); *H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989, 228 USPQ 528, 530 (Fed.Cir.1986); *Dan Robbins & Assocs., Inc. v. Questor Corp.*, 599 F.2d 1009, 1014, 202 USPQ 100, 105 (CCPA 1979). Evidence of purchaser understanding may come from direct testimony of consumers, consumer surveys, dictionary listings, as well as newspapers and other publications. *In re Northland Aluminum Prods., Inc.*, 777 F.2d 1556, 1559, 227 USPQ 961, 963 (Fed.Cir.1985).

The TTAB found that "the evidence demonstrates limited generic use of the term 'touchless' before members of the relevant purchasing public, namely, automobile owners and operators." This court discerns no clear error in this finding. The TTAB thoroughly discussed the limits of Magic Wand's evidence of generic use of TOUCHLESS for automobile washing services. Moreover, the TTAB points out that Magic Wand supplied no survey evidence of consumer understanding, no letters or testimony from consumers, and no affidavits from consumers showing generic use or understanding of TOUCHLESS. The TTAB committed no clear error in its consideration of the evidence of genericness.

■ In particular, the TTAB properly rejected Magic Wand's assertion that the relevant public comprises solely operators and manufacturers of car wash equipment. According to the certificate of registration, the TOUCHLESS mark applies to automobile washing services, not automobile washing equipment. Thus, the relevant purchasing public for automobile washing services encompasses automobile owners and operators. Vendors, operators, and manufacturers of washing equipment fall within the relevant public only as potential or actual customers. These vendors, operators, and manufacturers are a very small part of the relevant purchasing public. Accordingly, evidence of generic use by this small part of the relevant purchasing public has limited probative value. The TTAB did not clearly err in concluding that this evidence, considered along with the evidence of industry use, is not enough to show generic use or understanding by the relevant public. *Cf. Remington Prods. Inc. v. North Am. Philips Corp.*, 892 F.2d 1576, 1580–81, 13 USPQ2d 1444, 1448 (Fed. Cir.1990) ("travel care" found merely descriptive in light of, among other evidence, 135,000 advertising pieces using the term descriptively).

*Conclusion*

Magic Wand had the burden to show by a preponderance of the evidence that the primary significance of the TOUCHLESS

mark to the relevant public is the automobile washing service itself, rather than a washing service provided by a particular entity. The TTAB did not clearly err in finding that Magic Wand did not meet its burden. Therefore, the TTAB's decision denying Magic Wand's petition for cancellation is

AFFIRMED.