Paper No. 14
JQ

THIS DISPOSITION IS NOT
CITABLE AS PRECEDENT OF THE TTAB                    FEB 24, 98

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Phil Posthuma and Cordell Langeland
_____

Serial No. 74/664,809
_____

Lloyd A. Heneveld of Price, Heneveld, Cooper, DeWitt &
Litton for applicant.

Andrew P. Baxley, Trademark Examining Attorney, Law Office
104 (Sidney I. Moskowitz, Managing Attorney).
_____

Before Seeherman, Quinn and Hairston, Administrative
Trademark Judges.

Opinion by Quinn, Administrative Trademark Judge:

An application has been filed by Phil Posthuma and

Cordell Langeland, a partnership organized under the laws of

the state of Michigan composed of Phil Posthuma and Cordell

Langeland, both United States citizens (hereinafter

"applicant"), to register the mark PHANTASM for

"entertainment services in the nature of live theater

production."[1]

---

[1] Application Serial No. 74/664,809, filed April 24, 1995,
alleging dates of first use of April 9, 1993.

The Trademark Examining Attorney has refused registration under Sections 1, 2 and 45 of the Trademark Act on the ground that PHANTASM does not function as a service mark because it is the title of a single creative work.

When the refusal was made final, applicant appealed. Applicant and the Examining Attorney have submitted briefs.

Applicant urges that the refusal to register be reversed, contending that its services are performed periodically and they "obviously change from time to time due to the performance of the actors, musicians, crews, etc." (brief, p. 3) Applicant goes on to distinguish the present case from the ones involving the title of a single book wherein the proposed marks were found to be not registrable. See, for example, In re Cooper, 254 F.2d 611, 117 USPQ 396 (CCPA 1958); and In re Scholastic Inc., 223 USPQ 431 (TTAB 1984). Applicant argues that there are differences between "a book which is a document that can be considered to be written in stone and is a thing identified only by its title" and "[entertainment services in the nature of live theater production], the quality of which depends upon the performance of the actors, the crew, designers, and musicians, all of which are controlled to a great extent by the audition and selection by the applicants." (brief, p. 4) In connection with its arguments, applicant submitted materials bearing the

applied-for mark, namely, advertisements, stationery, tickets, prerecorded music cassette tapes and programs for the show PHANTASM.  According to applicant, PHANTASM is not merely the title of a written play, but is a service mark that is utilized in advertising and publicizing applicant's entertainment services.

The Examining Attorney contends that the title of a single literary work is not registrable and that the same reasoning used in the case of book titles is equally applicable to the titles of live theater productions.  The Examining Attorney maintains that, just as the title of a book merely describes the material found therein, the title of a live theater production describes the material in the play.  Even with changes in casts, musicians and crews, a live theater production remains the same single work, according to the Examining Attorney.  While the Examining Attorney acknowledges that applicant's playbills show differences between its productions of PHANTASM from year to year, he contends that changes are routinely made in live theater productions and that the production remains a single creative work.[2]

---

[2] Applicant attached to its appeal brief a copy of Registration No. 1,767,685 for THE PHANTOM OF THE OPERA and design for "entertainment services in the nature of live theatre production" ("The Phantom of the Opera" disclaimed).  The Examining Attorney properly objected to this evidence inasmuch as it was untimely submitted.  Trademark Rule 2.142(d).  The Examining Attorney stated that, in any event, the registration includes a disclaimer

3

We begin our analysis with the seminal case in this area of the law, a case that was issued forty years ago, namely, In re Cooper, supra. In that case, the Court of Customs and Patent Appeals, a predecessor to the Court of Appeals for the Federal Circuit, considered the issue of whether the title of a book was a registrable trademark for books under the Trademark Act of 1946. The court initially noted:

> It has so long been settled that the title of a book cannot be registered as a trademark, because it is not a trademark, that there has been some question in our minds as to whether the concurring decisions below should not be summarily affirmed with mere citation of some of the principal authorities.

Id. at 398.[3] The court observed that before there can be a registration, there must be trademark use. The court found

---

of the title of the live production and that this supports the Examining Attorney's view that the title of applicant's live theater production is unregistrable. We agree.

[3] Section 45 of the Trademark Act, as amended, 15 USC 1127, defines the word "trademark" as including
> any word, name, symbol, or device, or any combination thereof—-
> (1) used by a person, or
> (2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this Act, to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

Section 45 also sets forth the definition of a service mark:

that the proposed mark in that case (TEENY-BIG for

children's books) was a "descriptive name" rather than a

trademark.  The court explained as follows:

> But however arbitrary, novel or non-
> descriptive of *contents* the name of a
> book—-its title--may be, it nevertheless
> *describes* the book.
>
> *****
>
> A book title. . .especially one which is
> coined or arbitrary, identifies a
> specific literary work, of whatever kind
> it may be, and is not associated in the
> mind with the publisher, printer or
> bookseller--the "manufacturer or
> merchant" referred to in the Trademark
> Act (Sec. 45, definition of trademark).
> If a title is associated with anything,

---

> The term "service mark" means any word,
> name, symbol, or device, or any combination
> thereof—-
> (1)used by a person, or
> (2)which a person has a bona fide intention
> to use in commerce and applies to register
> on the principal register established by
> this Act, to identify and distinguish the
> services of one person, including a unique
> service, from the services of others and to
> indicate the source of the services, even
> if that source is unknown.  Titles,
> character names, and other distinctive
> features of radio or television programs
> may be registered as service marks
> notwithstanding that they, or the programs,
> may advertise the goods of the sponsor.

The last sentence of the definition of a "service
mark" was substituted in 1962 for "and includes
without limitation the marks, names, symbols, titles,
designations, slogans, character names, and
distinctive features of radio or other advertising
used in commerce."  While the title of a television or
radio **series** may be registrable (as is the title of a
series of books, see In re Cooper), a play is
distinguishable from such series because a play is a
single work, and the title of a single work does not
function as a source indicator for that work.

> it is with the author for it is he who
> has produced the literary work which is
> the real subject of purchase. [emphasis
> in original]

Id. at 400. The court further noted a "compelling reason"

why the name or title of a book cannot be a trademark:

> The protection accorded the property
> right in a trademark is not limited in
> time and endures for as long as the
> trademark is used. A book, once
> published, is protected against copying
> only if it is the subject of a valid
> copyright registration and then only
> until the registration expires, so
> eventually all books fall into the
> public domain. The right to copy which
> the law contemplates includes the right
> to call the copy by the only name it has
> and the title cannot be withheld on any
> theory of trademark right therein. As
> was aptly said in In re Page Company, 47
> App. D.C. 195, when copyright in a
> protected work expires, "the use of the
> descriptive name becomes publici
> juris.". . .Of course, it makes no
> difference whether the work whose name
> is sought to be registered is
> copyrighted. If it is not, the public
> may copy it at once and would be as
> clearly entitled to call it by its name.

Id. The court went on to deal with other arguments made by

applicant in that case, including that the rights in book

titles may be afforded some protection under the laws of

unfair competition. Further, the court distinguished

between the registrability as a trademark of the name of a

series of books and the unregistrability of the title of a

single book, the court noting that the name of a series is

not descriptive of any one book but is comparable to the title of a periodical publication such as a magazine or a newspaper.

Through the years the Board has reiterated that titles of single works are not registrable as trademarks. See, for example, Paramount Pictures Corp. v. Romulan Invasions, 7 USPQ2d 1897, 1899 (TTAB 1988), In re Hal Leonard Publishing Corp., 15 USPQ2d 1574 (TTAB 1990) and In re Scholastic, Inc., 23 USPQ2d 1774, 1776 (TTAB 1992). In In re Hal Leonard (involving the registrability of the proposed mark INSTANT KEYBOARD for a music instruction book), supra at 1576, the Board noted:

> This brings us to the second ground of refusal on the basis that INSTANT KEYBOARD is merely the title of a single creative work and therefore does not function as a trademark to indicate source. Over 30 years ago the Court of Customs and Patent Appeals recognized that it was then a settled principle that the title of a book cannot be registered as a trademark, and that principle remains unchanged today. [citing In re Cooper].

After careful consideration of applicant's arguments, we find that the title of applicant's live production, PHANTASM, is not a registrable service mark for entertainment services in the nature of live theater production. The materials of record in the application leave no doubt that PHANTASM is the title of applicant's

7

play.  PHANTASM appears in prominent fashion as the title on
tickets, playbills and advertisements for the performances.
In the "Producers' Notes" section of the playbill, the
following language appears:  "Welcome to the debut of
*Phantasm*. . .The word *Phantasm* means an illusion, or a false
perception of reality.  This **title** was chosen because it
demonstrates the conflicts that occur in the spiritual world
as well as the material world." [emphasis added]  The
cassette tape sound track recording reads "Phantasm  A
Musical".  In sum, the materials of record all identify
PHANTASM as the name of the live theater production, and the
purchasing public likely would perceive it as the title of
the play, as opposed to perceiving it as a service mark
identifying source or origin.  In this connection, we
believe that the title of a play is perceived in the same
manner as is the title of a book which, as discussed above,
is unregistrable.

Our view is that the language of In re Cooper, <u>supra</u>,
regarding the registrability of a book title is equally
applicable to the title of a live theater production.  In
point of fact, the court appeared to acknowledge as much in
its opinion:

> But, as in the case we are dealing with,
> authors and their publishers are
> constantly producing *new* books, the
> contents of which are new ideas in
> different forms--new **plays**, new yarns,
> new attempts to recapture the elusive

8

> spirit of childhood.  Each is a new
> thing, unique, which has to have a name.
> . .Appellant has nowhere attempted to
> answer the question, How else would you
> describe it- -what else would you call
> it?  If the name or title of a book were
> not available as a description of it, an
> effort to denote the book would sound
> like the playing of the game "Twenty
> Questions." [emphasis added to the word
> "plays"]

Id. at 399.  The court's reference to "plays" buttresses our

view that the registrability of the title of a live theater

production is closely analogous to the registrability of the

title of a book.

The gist of one of applicant's main arguments is that

plays are different from books because of the theater's live

component, with each performance differing due to the

abilities of the cast, stage crew, set designers, musicians

and the like.  Applicant also points out that its production

has evolved through the years by the addition of new

elements or the rearrangement of existing ones.  We are not

persuaded by these arguments.  We recognize that the nature

of live theater dictates that changes will occur from time

to time in a stage production.  Nonetheless, as appears to

be the case with applicant's production, the essential story

of the play remains, by and large, intact.  Whatever the

changes made to this live theater production, it still

remains a single work.  Thus, these often subtle changes do

not transform the show into a "series" of shows, thereby

9

turning the unregistrable title into a registrable service mark. Cf. In re Scholastic, Inc., <u>supra</u>.

Applicant, in arguing for reversal of the refusal, has not mentioned the Trademark Clarification Act of 1984, Pub. L. No. 98-620, 98 Stat. 3335, enacted November 8, 1984. However, we have considered this 1984 legislation inasmuch as one might argue that it has particular importance in these types of cases wherein titles of unique creative works are sought to be registered. That is to say, one might contend that a live theatrical play is a "unique" product, and that the 1984 Act provides that a proposed mark must not be denied registration solely because it identifies a unique product. We are not persuaded by such an analysis.

The legislative history of the Trademark Clarification Act of 1984 indicates that the Act was designed to clarify the standard for determining genericness and to do "nothing more than cure the problem caused by the ninth circuit" in their opinion in the <u>Anti-Monopoly</u> case[4] when that court canceled a registration of the mark MONOPLOY for board games. See: Trademark Clarification Act, 1984: Hearing on S. 1990 before the Subcommittee on Patents, Copyrights and Trademarks of the Senate Judiciary Committee, 98th Congress, 2d Session, reported in 3 Gilson, <u>Trademark Protection and</u>

---

[4] Anti-Monopoly, Inc. v. General Mills Fun Group, Inc., 684 F.2d 1316, 216 USPQ 588 (9th Cir. 1982), *cert. denied*, 459 U.S. 1227,

10

Practice: Section by Section Legislative History of the Lanham Act, p. 14-241 (1992). Congress in that year, by passing the Trademark Clarification Act, forbade use of the "purchaser motivation" test for genericness or abandonment. A review of the testimony and the reports before the relevant subcommittees of the House and the Senate shows that aside from reversing the standard used by the Ninth Circuit in the Anti-Monopoly case, the amendment was not intended to effect important substantive changes in the law or to disrupt other established trademark doctrines. Senate Report 98-627 on S. 1990, id., at 14-403. The legislation was not intended to "create new law or establish new standards, but rather reaffirms and clarifies the established principles of trademark law existing before the *Anti-Monopoly* decision." Id., at 14-404 and 14-511. As recently as 1992, the Board, as noted above, reiterated and followed the doctrine enunciated in In re Cooper, finding that the law in this area had not changed. Indeed, the legislative history of the Act reveals that it was not intended to change the law but merely to clarify it. See also: Magic Wand Inc. v. RDB Inc., 940 F.2d 638, 19 USPQ2d 1551 (Fed. Cir. 1991) [The court noted the statement of Senator Hatch, the original sponsor of the legislation:

---

103 S.Ct. 1234 (1983), *reh. denied*, 460 U.S. 1104, 103 S.Ct. 805 (1983).

"The bill is not intended to effect important substantive changes in the mainstream of trademark law."].

To allow registration of play titles and not book titles would lead to the anomalous result of registering such titles as "Ragtime" and "Having Our Say" for a single theatrical production, but not allowing registration when these same titles are used as book titles. Titles of plays and book titles (or, for that matter, movie titles) are likely perceived in the same manner by the public, so we see no reason why they should be treated differently by the Office.

We conclude that PHANTASM, as the title of a single live theater production, is unregistrable because it does not function as a service mark.

Decision:  The refusal to register is affirmed.


E. J. Seeherman


T. J. Quinn


P. T. Hairston

Administrative Trademark
Judges, Trademark Trial
and Appeal Board


12