Paper No. 37
JQ

THIS DISPOSITION IS
CITABLE AS PRECEDENT OF THE TTAB          NOV. 30 ,98

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

Micro Motion, Inc.
v.
Danfoss A/S
_____

Opposition No. 93,658
to application Serial No. 74/277,583
filed on May 20, 1992
_____

James L. Sears of The M.H. Sears Law Firm Chartered for
Micro Motion, Inc.

Thomas E. Smith of Lee, Mann, Smith, McWilliams, Sweeney &
Ohlson for Danfoss A/S.
_____

Before Seeherman, Quinn and Hohein, Administrative Trademark
Judges.

Opinion by Quinn, Administrative Trademark Judge:

An application has been filed by Danfoss A/S to
register the term MASSFLO for "flowmeters for the
measurement of flow of mass of fluids."[1]

---

[1] Application Serial No. 74/277,583, filed May 20, 1992, alleging
a date of first use of June 1985 and a date of first use in
commerce of March 1989.  Applicant also claims ownership of
Danish Registration No. 00.390 1986, issued January 31, 1986.

Micro Motion, Inc. has opposed registration on the ground that the term sought to be registered is generic.

Applicant, in its answer, denied the allegations in the notice of opposition.

The record consists of the pleadings; the file of the involved application; trial testimony, with related exhibits, taken by each party; official records introduced by way of opposer's notice of reliance; and the exhibits listed by opposer in the December 21, 1994 declaration of James L. Sears.[2]

The Board, before turning to the merits of the opposition, must first direct its attention to a procedural matter.  When opposer filed its brief on the case, opposer contemporaneously filed a motion to amend the pleadings to conform them with the evidence as provided by Fed. R. Civ. P. 15(b).  More specifically, opposer seeks to add a claim of mere descriptiveness, contending that testimony was taken, without objection, such that the issue was tried by the parties.  The Board, consistent with its practice, earlier deferred until final hearing a ruling on the motion. *Trademark Trial and Appeal Board Manual of Procedure* (*TBMP*), § 507.03(b).

---

[2] The declaration and exhibits were submitted in connection with a motion for summary judgment filed by opposer.  The parties filed, on October 15, 1996, a stipulation to the effect that this evidence be admitted and deemed properly of record for purposes

Applicant has objected to opposer's motion, arguing that the sole issue in this case is genericness. Applicant essentially contends that had mere descriptiveness been an issue at trial, then applicant would have presented evidence bearing on acquired distinctiveness. Applicant claims that to allow an amendment to the pleadings at this late stage "would in effect prevent applicant from putting in a defense not only of non-descriptivenss but of acquired distinctiveness." Applicant maintains that opposer had ample time to amend its pleading prior to trial and, in this connection, points to the Board's decision denying opposer's motion for summary judgment wherein the Board noted that "[t]here has been no assertion either in the pleading or in the summary judgment motion that the mark is merely descriptive of applicant's goods."

Fed. R. Civ. P. 15(b) provides, in pertinent part, that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

Opposer's motion to amend is not well taken. Our review of the record convinces us that the issues of mere descriptiveness and acquired distinctiveness were not tried by the parties as contemplated under Fed. R. Civ. P. 15(b). Colony Foods, Inc. v. Sagemark, Ltd., 735 F.2d 1336, 222

---

of trial. The Board, on October 28, 1998, approved the

USPQ 185 (Fed. Cir. 1984).  The evidence allegedly bearing on mere descriptiveness easily could be interpreted as going to genericness.  Under such circumstances, we cannot say that applicant was fairly apprised that the evidence was being introduced in support of the unpleaded mere descriptiveness issue.  To allow amendment at this late juncture would result in undue prejudice to applicant.  In this connection, we particularly note applicant's assertion that had it been on notice at trial that mere descriptiveness was an issue, applicant's defense likely would have included evidence of acquired distinctiveness.  Inasmuch as it appears that applicant was not on notice that mere descriptiveness was an issue in this case, the motion to amend is denied.

We now turn to the merits of the genericness claim.  A term is generic if it names the class of the goods or services to which it is applied.  See:  H. Marvin Ginn Corp. v. International Association of Fire Chiefs, Inc., 782 F.2d 987, 228 USPQ 528 (Fed. Cir. 1986), and In re Northland Aluminum Products, Inc., 777 F.2d 1556, 227 USPQ 961 (Fed. Cir. 1985).  The test for determining whether a term is generic is its primary significance to the relevant public, that is, whether the term is used or understood, by purchasers or potential purchasers of the goods or services

---

stipulation.

4

at issue, primarily to refer to the class of such goods or services. See: Magic Wand Inc. v. RDB Inc., 940 F.2d 638, 19 USPQ2d 1551 (Fed. Cir. 1991); In re Merrill Lynch, Pierce, Fenner, and Smith Inc., 828 F.2d 1567, 4 USPQ2d 1141 (Fed. Cir. 1987); H. Marvin Ginn Corp. v. International Association of Fire Chiefs, Inc., supra; and In re Leatherman Tool Group, Inc., 32 USPQ2d 1443 (TTAB 1994). Evidence of the relevant public's understanding of a term may be obtained from any competent source, including direct testimony of consumers, consumer surveys, newspapers, magazines, dictionaries, catalogs, and other publications. See: In re Merrill Lynch, Pierce, Fenner, and Smith Inc., supra, and In re Northland Aluminum Products, Inc., supra.

The record includes the following dictionary listings taken from the *Academic Press Dictionary of Science and Technology* (1992):

> **mass flow** *Fluid Mechanics*. the mass of a fluid substance that passes a specified unit area in a unit amount of time.
>
> **mass flowmeter** *Engineering.* an instrument that measures the mass of fluid flowing through a pipe per unit of time.

Opposer also introduced an excerpt from the *McGraw-Hill Encyclopedia of Science and Technology* (1992) which includes a section on "mass flow rate meters."

The record is replete with references to "mass flowmeter," "mass flow meter" and "flowmeter" as the names of a specific type of product, namely a meter that measures mass flow. By way of examples, applicant's specimens, advertisements and product literature refer to applicant's product as "flowmeter" or "mass flowmeter." Opposer and third parties in the trade use the terms in the same way to name their same type of product. Further, applicant's patents show the name of applicant's product as "mass flow meter working on the coriolis principle," with the patents, in several instances, broadly referring to the product as a "meter." Witnesses for each party refer time and again to the product as a "mass flowmeter" or "flowmeter." Numerous excerpts from printed publications refer to the name of the product in similar fashion.

There can be no dispute, and applicant essentially acknowledges (brief, p. 15) that the category of goods involved in this case is "mass flowmeters," that is, meters that measure mass flow. While not used as often as "mass flowmeters," an alternative form of the name of the category is "mass flow meters" (where the terms "flow" and "meters" are separated by a space).

We find the term "mass flow" to be generic as applied to the particular type of meter sold by applicant. More specifically, we find that the term MASSFLO likewise is

generic as applied to mass flowmeters.  In making this determination, we readily acknowledge the sometimes-used distinction that generic names are nouns and descriptive terms are adjectives.  2 J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 12:10 (4th ed. 1997) ["A rule of thumb sometimes forwarded as distinguishing a generic name from a descriptive term is that generic names are nouns and descriptive terms are adjectives.  However, this "part of speech" test does not accurately describe the case law results."].  Here, we recognize that "mass flow" is a noun when used as the name of a measurement taken by mass flowmeters, and is an adjective when used in connection with the meters that themselves measure mass flow (namely, mass flowmeters).  This adjectival use, however, does not remove the term from being generic when used in connection with meters of the type sold by applicant.  "Mass flow" is the name of a meter in the same way as "gas" and "water" name types of meters.  Moreover, applicant's term MASSFLO is phonetically equivalent to "mass flow."  In short, MASSFLO is the name of a category of meter.  In this case, because the term MASSFLO directly names the most important or central aspect or purpose of applicant's goods, that is, that the meters are mass flowmeters (meters that measure mass flow), this term is generic and should be freely available for use by competitors.  See:  In re Northland

Aluminum Products, Inc., <u>supra</u> [BUNDT for coffee cake held generic]; In re Sun Oil Co., 426 F.2d 401, 165 USPQ 718 (CCPA 1970) [CUSTOMBLENDED for gasoline held generic because category of gasoline was blended personally for the motorist]; In re Helena Rubinstein, Inc., 410 F.2d 438, 161 USPQ 606 (CCPA 1969) [PASTEURIZED for face cream held generic]; In re Preformed Line Products Co., 323 F.2d 1007, 139 USPQ 271 (CCPA 1963) [PREFORMED for preformed electrical equipment held generic]; Servo Corp. of America v. Servo-Tek Products Co., 289 F.2d 955, 129 USPQ 352 (CCPA 1961) [SERVO for servomechanisms held generic]; J. Kohnstam, Ltd. v. Louis Mark & Co., 280 F.2d 437, 126 USPQ 362 (CCPA 1960) [MATCHBOX for toy vehicles held generic because that category of toy cars was sold in matchbox-sized boxes]; In re Central Sprinkler Company, ___USPQ2d___ (TTAB October 22, 1998, Application Serial No. 74/505,190) [ATTIC for automatic sprinklers for fire protection of attics held generic]; In re Pennzoil Products Co., 20 USPQ2d 1753 (TTAB 1991) [MULTI-VIS for multiple viscosity motor oil held generic]; In re Reckitt & Colman, North America Inc., 18 USPQ2d 1389 (TTAB 1991) [PERMA PRESS for soil and stain removers held generic]; In re National Patent Development Corp., 231 USPQ 823 (TTAB 1986) [ULTRA PURE for biological interferons for medical use held generic]; Fluid Energy Processing & Equipment Co. v. Fluid Energy, Inc., 212 USPQ

28 (TTAB 1981) [FLUID ENERGY for hydraulic/pneumatic equipment held generic]; Copperweld Corp. v. Arcair Co., 200 USPQ 470 (TTAB 1978) [COPPERCLAD for copper-coated carbon electrodes held generic]; In re Demos, 172 USPQ 408 (TTAB 1971) [CHAMPAGNE for salad dressing held unregistrable]; and Ethicon, Inc. v. Deknatel, Inc., 183 USPQ 503 (TTAB 1963) [COTTONY for sutures held generic].

Further, the fact that MASSFLO is a telescoped, slightly misspelled version of "mass flow" does not compel a different result. The deletion or change in one letter normally does not transform a generic term into a source indicator. See, e.g., In re Stanbel, Inc., 16 USPQ2d 1469 (TTAB 1990), *aff'd without pub. op.*, 20 USPQ2d 1319 (Fed. Cir. 1991)[where the record established that the term "ice pack" was a generic designation for a "nontoxic reusable ice substitute for use in food and beverage coolers," applicant's asserted mark ICE PAK was held generic and, therefore, unregistrable]. See also cases cited at *McCarthy on Trademarks and Unfair Competition*, supra at §§ 11:31 and 12:38. Moreover, the misspelling here still results in the phonetic equivalent of the generic term. The terms "mass flow" and "massflo" are pronounced the same and, given the commonly understood meaning of the term "mass flow" in the trade, we have no doubt that the two terms would be viewed as having the same meaning. That is to say, applicant's use

of the term MASSFLO would be understood by relevant purchasers as primarily naming a category of meters, namely mass flowmeters.

The fact that applicant has obtained certain foreign registrations of MASSFLO also is not persuasive of a different result here. We agree with opposer that this evidence is irrelevant inasmuch as the determination of genericness must be governed by the statute and legal principles of this country. Additionally, the fact that a third party was able to obtain in the United States a registration of MASS-FLO for "instruments for measuring and controlling the flow of gases and vapors" is of no moment. Each case must be decided on its own facts and, while uniform treatment under the Trademark Act is highly desirable, our task here is to determine, based upon the record before us, whether applicant's mark is registrable.[3]

As highlighted by applicant, the record reveals that none of the witnesses is familiar with any uses of the term MASSFLO in the industry other than applicant's use, and that no one calls a "mass flowmeter" a "mass flow." Nonetheless, we would point out that the record is replete with examples showing that the term "mass flowmeter" is a commonly used term and that people in the industry are familiar with the term. That applicant may have been the first to use and/or

10

is currently the only entity using the term MASSFLO (with the term "meter" implied) does not undercut the fact that the term "mass flow" is understood to be a type of meter.

---

[3] In this connection, we note that opposer has filed a petition to cancel Registration No. 1,646,730 (Cancellation No. 26,302).

Decision:  The opposition is sustained and registration to applicant is refused.

E. J. Seeherman

T. J. Quinn

G. D. Hohein
Administrative Trademark
Judges, Trademark Trial
and Appeal Board

12