Hearing:
June 14, 2005

**THIS OPINION IS CITABLE AS PRECEDENT OF THE TTAB**

Mailed:
December 6, 2005
Bucher

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————

**Trademark Trial and Appeal Board**
————

In re DNI Holdings Ltd.
(by assignment from Nortech Investments Ltd.)[1]
————

Serial No. 76331011
————

Steven A. Gibson of Santoro Driggs Walch Kearney Johnson & Thompson for DNI Holdings Ltd.

Michael P. Keating, Trademark Examining Attorney, Law Office 113 (Odette Bonnet, Managing Attorney).
————

Before Quinn, Hairston and Bucher, Administrative Trademark Judges.

Opinion by Bucher, Administrative Trademark Judge:

DNI Holdings Ltd. seeks registration on the Principal Register, or in the alternative, on the Supplemental Register, of the mark **SPORTSBETTING.COM** *(standard character drawing)* for services recited in the application as follows:

---

[1]     This application was assigned from Nortech Investments Ltd., the original applicant at the time of filing, to DNI Holdings Ltd., a corporation of Antigua and Barbuda, as of August 2005.  This assignment was recorded with the Assignment Division of the United States Patent and Trademark Office at Reel 3147, Frame 0465.

> "Provision of casino games on and through a global computer network wherein there are no actual monetary wagers; provision of contests and sweepstakes on and through a global computer network; providing a web site on and through a global computer network featuring information in the fields of gaming, athletic competition and entertainment" in International Class 41.[2]

This case is now before the Board on appeal from the final refusal of the Trademark Examining Attorney to register this designation based upon the ground that the proposed mark is generic for the identified services. In the alternative, the Trademark Examining Attorney contends that in the event this term should be found not to be generic for the identified services, it is merely descriptive, and hence unregistrable on the Principal Register.

Applicant and the Trademark Examining Attorney have fully briefed this appeal, and at applicant's request, a hearing was held before this panel of the Board on June 14, 2005.

We affirm both alternative refusals to register, i.e., as to the Principal and Supplemental Registers.

---

[2] Application Serial No. 76331011 was filed on October 25, 2001 based upon applicant's allegation of first use anywhere and first use in commerce at least as early as November 2, 1999.

The Trademark Examining Attorney takes the position that inasmuch as a term such as "sportsbetting" is a compound word (i.e., two words combined without a space between the words), and because the evidence of record demonstrates that each of the constituent words is generic, and because the separate words joined to form a compound term have a meaning identical to the meaning common usage would ascribe to those words as a compound, he has established that the term "sportsbetting" is incapable of functioning as a mark. *In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110 (Fed Cir. 1987) [SCREENWIPE generic for cleaning wipes for television and computer screens]. The Trademark Examining Attorney has placed into the record multiple examples of where these two words are actually joined together into a single compound term and used generically by applicant and by its competitors, for both sports wagering and for providing information regarding sports and betting. The Trademark Examining Attorney argues that the ".com" portion of applicant's applied-for matter does not create source-identifying significance when appended to this generic term. The Trademark Examining Attorney also points out that applicant, in Reg. No. 2434774, disclaimed the terms "sportsbetting" and "com"

apart from the special form mark as shown.[3]  Finally, even if the applied-for term is found to be not generic, the Trademark Examining Attorney argues that it is merely descriptive and, thus, is barred from registration on the Principal Register.

By contrast, applicant argues that even if it is true that applicant is providing services through its website wherein consumers are actually able to wager money on sports, applicant is not seeking registration for these services.  In fact, it specifically limited the claimed services so as to *exclude* monetary wagering.  As a result, applicant argues that the Trademark Examining Attorney's refusal to register its mark, based upon genericness for services not claimed by applicant, cannot stand.

It has been repeatedly stated that "[d]etermining whether a mark is generic … involves a two-step inquiry: First, what is the genus of goods or services at issue? Second, is the term sought to be registered or retained on the register understood by the relevant public primarily to

---

[3]    Reg. No. 2434774 issued to Nortech Investments Ltd. for services recited as "computer services, namely providing databases featuring sports news," on the Supplemental Register on March 13, 2001.  According to the registration, applicant made no claim to the exclusive right to use the terms SPORTSBETTING and COM apart from the mark as shown.

refer to that genus of goods or services?" *H. Marvin Ginn v. International Association of Fire Chiefs, Inc*. 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986). In a proceeding such as this, the genus of the services at issue is determined by focusing on the recital of services in the application itself. *Magic Wand Inc. v. RDB Inc.*, 940 F.2d 638, 19 USPQ2d 1551, 1552 (Fed. Cir. 1991) ["Thus, a proper genericness inquiry focuses on the description of services set forth in [the application or] certificate of registration."].

Moreover, the burden rests with the Trademark Examining Attorney to establish that the mark sought to be registered is generic for the services. *In re Merrill Lynch, Pierce, Fenner & Smith, Inc*., 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1997). The Office must be able to satisfy both elements of the test as set forth in the controlling precedent of *Marvin Ginn*, bearing in mind that "[a]ptness is insufficient to prove genericness." *See In re American Fertility Society*, 188 F.3d 1341, 51 USPQ2d 1832, 1836 (Fed. Cir. 1999). It is incumbent upon the Trademark Examining Attorney to make a "*substantial showing* … that the matter is in fact generic." Indeed, this substantial showing "must be based on *clear evidence* of

generic use." *Merrill* *Lynch*, 4 USPQ2d at 1143. Thus, it is beyond dispute that "a strong showing is required when the Office seeks to establish that a term is generic." *In re* *K-T* *Zoe* *Furniture* *Inc.,* 16 F.3d 390, 29 USPQ2d 1787, 1788 (Fed. Cir. 1994). Furthermore, doubt on the issue of genericness is resolved in favor of the applicant. *In re* *Waverly* *Inc.,* 27 USPQ2d 1620, 1624 (TTAB 1993).

Addressing the first part of the *Marvin* *Ginn* genericness inquiry above, the Trademark Examining Attorney repeatedly focused on applicant's "sports betting services via the Internet." However, applicant argues that a proper genericness inquiry focuses on the description of services as recited in the application – not on whether applicant's website actually offers sports betting services. In fact, it should be noted that applicant does offer sports betting services, as revealed by claims on its own website: "SPORTSBETTING.COM is the simplest and most popular destination for sports betting on the Internet." Applicant argues as follows:

> " … Applicant may be providing services wherein consumers can wager and win real cash. However, Applicant at this time is not claiming registration for such services. Indeed, Applicant has specifically limited the relevant services to not include monetary wagering."

Applicant's response to fourth Office action, p. 3.

In determining the first part of the _Marvin_ _Ginn_ genericness inquiry in this case, we are faced immediately with the question of whether it is consistent with the letter and the spirit of the Lanham Act for an applicant to carve out from the recitation contained in the application what are arguably its core services in order to avoid a likely finding of genericness. Specifically, applicant has deftly carved out any reference to "sports betting services," all the while admitting that its website may well offer sports betting services. Must this Board turn a blind eye to the reality of what is being offered on the named website, restricting our purview to the recitation of services in the application itself, as suggested by the _Magic_ _Wand_ case?

We do not believe that is what _Magic_ _Wand_ requires. The _Magic_ _Wand_ case involved a petition to cancel the registration of the service mark TOUCHLESS on the ground that the term TOUCHLESS was generic for "automobile washing services." The petitioner in that case attempted to focus on a "relevant public" that was unwarranted by the description of services, namely, manufacturers and dealers of car wash equipment, and not the automobile owners and

- 7 -

operators to whom the automobile washing services would be directed.  Thus, the decision's statement that "a proper genericness inquiry focuses on the description of services set forth in the certificate of registration" must be read in that context, i.e., as an explanation of the error in petitioner's attempt to focus on a relevant public not warranted by the actual recitation of services.  Further, the quoted reference from the *Magic Wand* case is preceded by the Federal Circuit's observation that "[t]he description in the registration certificate identifies the services in connection with which the registrant uses the mark."  *Magic Wand*, *supra* at 1552.  The Court also observed:  "According to the registration, the mark TOUCHLESS *is used* in connection with automobile washing services."  *Id*. [*emphasis* supplied].  Thus, it is clear that the analytical focus on the recitation of services is based on the premise that the recitation accurately reflects actual conditions of use of the involved term. *See also*, *In re American Fertility Society*, supra at 1836 ["The *PTO must prove*:  (1) what the genus of the services the Society provides is …."], and *In re Web Communications*, 49 USPQ2d 1478, 1479 (TTAB 1998) ["We agree with applicant that its services in the broadest sense would be considered

'consulting services.'  But there are many varieties of consulting services and each would necessarily be further identified as to the particular subject or focus of the services being offered.  Here applicant has described a major focus of its services *in the specimens of record* as 'publication and communication via the World Wide Web ….' Applicant's services enable its customers to achieve this communication by assisting them in setting up their own Web sites." (*emphasis* supplied)].

We also note that the Federal Circuit, in describing the genus of goods and services offered by the applicant in *In re Steelbuilding.com*, 415 F.3d 1293, 75 USPQ2d 1420 (Fed. Cir. 2005), began by focusing on applicant's amended recitation of services ["computerized on-line retail services in the field of pre-engineered metal buildings and roofing systems"], but in deriving the correct genus of goods and services, then went on to look at the actual website and other evidence of record:

> As an initial matter, this court examines the Board's understanding of the genus of goods or services at issue.  The applicant defined its goods and services, in its amended application, as "computerized on-line retail services in the field of pre-engineered metal buildings and roofing systems."  Although the definitions of the applicant and of the Board appear nearly identical, the parties understand the phrase

> "computerized on-line retail services" differently.  Applicant sells steel buildings on line, but the record indicates it provides services beyond mere sales.  In other words, the services at issue are far more than an on-line catalogue.  The applicant's web site permits a customer to first design, then determine an appropriate price for, its own unique design.  Finally, the customer may purchase its unique building on line.  The web site features a process that facilitates the customer's design of his building at his own computer via a complex interactive process.
>
> The STEELBUILDING.COM web site thus includes more than a mere shopping guide for metal building structures.  As the program-user develops the design, the program re-calculates design elements as necessary to meet codes and other engineering requirements.  The program then calculates a price for the designed building.  The purchaser can compare prices of different designs, and finally purchase a preferred design.  Therefore, while correctly concluding that "[a] significant, if not primary feature, of applicant's services is the sale of steel buildings," *id.* at 4, the Board fails to acknowledge the interactive design feature of the applicant's goods and services.

*Id.* at 1422.  In this vein, particularly where a single website is offering a variety of interrelated, interactive services, it seems appropriate to take all of those largely undifferentiated services into consideration when defining the genus of services.  Accordingly, despite applicant's tactical decision to carve them out of its recitation of

services, we find that the relevant genus of services herein includes wagering on sporting events.

Even if we are constrained to ignore the realities of use actually made by applicant because applicant has purposely drafted a description omitting that use, this does not end the first part of the *Marvin Ginn* inquiry into possible genericness. Applicant's recitation of services includes the providing of a website "featuring information in the fields of gaming, athletic competition and entertainment." That is, even if for purposes of this inquiry, we were to ignore applicant's clear offering on its website of "sports betting services," we nonetheless find that the class or category of services described in the application still clearly includes that of providing information regarding sports and betting. *See In re CyberFinancial.Net Inc.*, 65 USPQ2d 1789 (TTAB 2002) [BONDS.COM generic for identified information services related to investment securities even where applicant does not buy or sell bonds].

We turn then to the second part of the *Ginn* inquiry, namely, whether the term sought to be registered is understood by the relevant public primarily to refer to that genus of services.

Not surprisingly, the Trademark Examining Attorney did not find the combined term "sportsbetting" as a single entry in a dictionary. Nonetheless, the Trademark Examining Attorney analyzed the meaning of the individual components making up the term "sports betting":

> The term "sport" is defined in part as "[p]hysical activity that is governed by a set of rules or customs and often engaged in competitively; a particular form of this activity; an activity involving physical exertion and skill that is governed by a set of rules or customs and often undertaken competitively." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4 ed. 2000) (attached to Final Office Action of July 13, 2004). The term "sports" is simply a variant of the term, and may be defined in part as "of relating to, or appropriate for sports: *sport fishing; sports equipment.*" *Id*. The term "betting" is a variant of the term "bet," which is defined in part as "an agreement usually between two parties that the one who has made an incorrect prediction about an uncertain outcome will forfeit something stipulated to the other, a wager. 2. An amount or object risked in a wager; a stake. 3. One on which a stake is or can be placed: *Our team is a sure bet to win.*" *Id*.

We find that these dictionary definitions show that "sports betting" is the equivalent of "sports wagering" or "wagering on sports." We have no doubt but that joining the separate words "sports" and "betting" creates a term that, in context, would be generic for a service that permits one to wager on sporting events. In this case, the

combined term is not greater than the sum of its parts. *See Gould, supra.*

This set of circumstances contrasts factually with *In re Steelbuilding.com*, *supra*. There, the Court found an absence of any evidence of use of "steelbuilding" as one word. By contrast, the examples in the instant record, *infra*, demonstrate that it is not at all unusual for competitors to use the terms "sports betting" in website headings and within normal text on web pages, connoting wagering on sports events and related activities. And, unlike the *Steelbuilding.com* case, we have many examples of use of "sportsbetting" as one word, in website headings, within normal text on web pages, as well as using them in combination with other words, alpha-numerics, names and symbols within their respective domain names, and again, all connoting wagering on sports events and related activities.

The Court in *Steelbuilding.com* also found that joinder of the separate words "steel" and "building" with the TLD ".com" created a "formulation" that, in context, could be perceived by the relevant public as meaning either "steel buildings" available via the Internet or "the building of steel structures" via an Internet website. While not using

the term "double entendre," the Court's reasoning in

*Steelbuilding.com* suggests a non-descriptive connotation

(perhaps not unlike SUGAR & SPICE for bakery products,[4] THE

SOFT PUNCH for noncarbonated soft drink,[5] and NO BONES ABOUT

IT for fresh pre-cooked ham[6]).  The Court found that simply

joining the separate words "steel" and "building" and the

TLD ".com" does not necessarily create a compound term that

would be generic for "computerized online retail services

in the field of pre-engineered metal buildings and roofing

systems."  Specifically, given the interactive design

feature of that applicant's goods and services, the Court

concluded that STEELBUILDING could also refer to "the

building of steel structures."

Although applicant argues there are other possible

meanings for these two components,[7] creating lots of

---

[4]     *In re Colonial Stores Incorporated*, 394 F.2d 549, 157 USPQ
382 (CCPA 1968).

[5]     *In re Delaware Punch Co.*, 186 USPQ 63 (TTAB 1975).

[6]     *In re National Tea Co.*, 144 USPQ 286 (TTAB 1965).

[7]     Applicant argues that the Trademark Examining Attorney
       "completely ignor[es] other meanings of the terms 'sports'
       and 'betting' as set forth in his proffered dictionary
       evidence, to wit:  (a) with respect to 'sports' mockery,
       jest, to play or frolic, to mutate, and designed for
       outdoor or informal wear; and (b) with respect to 'betting'
       — to maintain confidentiality, to plan or option to be
       considered, and to be of course (i.e., 'you bet')."
Applicant's appeal brief, p. 11.
       Then in its reply brief, applicant puts these other
meanings together to suggest alternative meanings for the
combination:

seemingly nonsensical permutations when various dictionary definitions are combined, it has not pointed convincingly to a double entendre or to realistic multiple connotations created by this compound term (e.g., "sports betting" or SPORTSBETTING).

In defining the "relevant public" whose understanding and perception of SPORTSBETTING.COM is critical to our analysis (*see Magic Wand Inc*., *supra* at 1553), we must include all persons having access to the Internet who might potentially wager on sports. With that definition of "relevant public" in mind, the Trademark Examining Attorney characterizes the evidence in the file as follows:

> It is similarly clear from the record herein that the providers of sportsbetting services use the term in reference to the providing of information in this field, such as sportsbetting information. The results of a search of the GOOGLE® database attached to

"Moreover, the [sic] joining the individual terms to form the Mark lends additional meaning to the Mark. Specifically, a consumer can reasonably interpret the Mark to be associated with any of the following, at a minimum, or numerous other imaginative wonders:
a.   SPORTSBETTING.COM, the risks and benefits of casual wear.
b.   SPORTSBETTING.COM, the reliance upon a friend, companion or other good sport.
c.   SPORTSBETTING.COM, feedback and rankings related to comedic or amusement performances.
d.   SPORTSBETTTNG.COM, the mocking of lottery ticket purchasers.
… Indeed, the Applicant asserts that the Mark is an amalgam of letters not identified in any known dictionary and is therefore, not generic of the Claimed Services."
Applicant's reply brief, p. 9.

> the Office Action of December 15, 2003 for the term "sportsbetting" resulted in approximately 216,000 hits, and copies of web pages viewed as part of the results of said search and of record herein show use of the mark in generic fashion for both betting and providing of sportsbetting information.

As seen throughout this record, applicant's own website uses the expression "sports betting," e.g., touting itself as "the leader in online sports betting" and providing tips on "sports betting" as a game of skill. Furthermore, as the Trademark Examining Attorney has demonstrated in this record, other entities competing with applicant also use the term "sports betting" (and "sportsbetting") in generic fashion in describing their wagering and information services:

> **Sports Betting**
> Online **Sportsbetting** Resources[8]
>
> Sportsbooks Today:  Your guide to Sportsbooks and **Sportsbetting** …[9]
>
> **Sports betting** odds at the #1 **sportsbetting** destination on the internet.[10]
>
> **Sportsbetting** Guide
> *Preferred Sportsbooks and Resources*[11]
>
> Online **sports betting** lines, odds … **Sports Betting** on Football, Basketball, NFL, NBA, NCAA … [12]

---

[8]    http://www.casino-sportsbetting-directory.com/
[9]    http://www.sportsbooks-today.com/
[10]   http://www.1stsportsbetting.com/
[11]   http://www.winneronline.com/sports/
[12]   http://www.365dayssportsbetting.com/

> 88 **Sports Betting** offers real-time **sports betting** lines on every sports event … [13]
>
> 24 Hour **Sports Betting** & Casino, bet on sports from the comfort of your home 24 hours a day, 7 days a week![14]
>
> **Sports Betting** and Online Casino Since 1997[15]

We note that some websites above use variations on this term, with and without a space (e.g., "sports betting" and "sportsbetting"), and sometimes both ways within the same sentence. As a matter of trademark law, "sports betting" is equivalent to "sportsbetting," which in its combined or collapsed form is not greater than the sum of its parts. *See In re Gould Paper*, *supra*; [SCREENWIPE generic for a wipe for cleaning television and computer screens]; *In re Abcor Dev.*, *supra*, [GASBADGE at least descriptive for gas monitoring badges; three judges concurred in finding that term was the name of the goods]; *In re Planalytics Inc.*, 70 USPQ2d 1453 (TTAB 2004) [GASBUYER merely descriptive of "on-line risk management services in the field of pricing and purchasing decisions for natural gas"]; *In re Orleans Wines, Ltd.*, 196 USPQ 516 (TTAB 1977) [BREADSPRED descriptive for jams and jellies that would be a spread for bread]; and *In re Perkin-Elmer*

---

[13]    http://www.88sportsbetting.com/
[14]    http://www.24hoursportsbetting.com/
[15]    http://www.sportbet.com/

*Corp*., 174 USPQ 57 (TTAB 1972) [LASERGAGE merely descriptive for interferometers utilizing lasers].

As to domain names, presumably international protocols define a limited range of printable characters for second level domain names, including that they cannot contain spaces.  We observe that, generally, adjacent words are simply run together in domain names (or at the very least, any spaces occurring naturally in normal English language text must be replaced with a hyphen or similarly-approved characters).

In the case at hand, assessed under *American Fertility*, *supra*, we have voluminous evidence of use of the designations "sports betting" and "sportsbetting" by applicant and by its third-party competitors.  All of this evidence persuades us that members of the relevant public, i.e., persons with Internet access who might wager on sports, primarily perceive "sports betting" and "sportsbetting," usually set forth in lower case letters, as generic.  This is true even if applicant should be able to demonstrate (which it has not) that a growing subset of the gaming public may draw an association between applicant and the services offered at the www.sportsbetting.com website.  *In re American Institute of Certified Public*

*Accountants*, 65 USPQ2d 1972 (TTAB 2003) [the term CPA EXAMINATION is generic for "printed matter, namely, practice accounting examinations; accounting exams; accounting exam information booklets; and prior accounting examination questions and answers," even if a sizable subset of that public draws an association between the AICPA and the UNIFORM CPA EXAMINATION.].  Hence, if the genus of services is construed to include providing for wagering on sports, "sports betting" is clearly generic for such services.

We turn next to our alternative holding, based upon an explicit exclusion of applicant's "sports betting services" from the genus of services (e.g., as discussed *supra*, in the first part of the *Marvin Ginn* genericness inquiry).

As seen on applicant's website – and, similarly, on the websites of third-party competitors – much of the discussion about "sports betting" (or "sportsbetting") focuses on the need to gather and analyze as much information as one can to become knowledgeable about the particular sport on which one is wagering.  Hence, when it comes to the activity of "sports betting," we find that the information piece of applicant's recited services is inextricably tied into the actual betting.  This linkage is

not unique to the field of gaming.  This tying together of information and the underlying activity is analogous, for example, to our finding that the word "bonds" (and hence the mark BONDS.COM) is generic for information services related to debt instruments and other related investment securities.  *CyberFinancial.Net, supra*.[16]

Our adherence to the holdings of reported decisions like *CyberFinancial.Net* is also not affected by the Court's discussion in *Steelbuilding.com*, *supra*, inasmuch as we can find no reason why this would be one of those "unusual cases" where the addition of the top level domain indicator (TLD) expands the meaning of the mark to include services beyond offering sports wagering or providing information about sports wagering.[17]  When considered in its entirety,

---

[16]    In this alternative analysis, having found the applied-for matter generic for the third portion of the recitation of services, namely, 'providing information regarding sports and betting,' registration is appropriately denied if the term is generic for *any* of the goods or services for which registration is sought.  *See In re Quik-Print Copy Shop, Inc*., 616 F.2d 525, 205 USPQ 505, 507 (CCPA 1980).  Accordingly, we do not find it necessary to discuss further the first two portions of the recitation of services in International Class 41, e.g., (1) casino games for fun, and (2) contests and sweepstakes.

[17]    The Court of Appeals for the Federal Circuit introduced its own hypothetical during oral argument in the case of *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 71 USPQ2d 1370, 1373 (Fed. Cir. 2004) [PATENTS.COM merely describes patent-related goods in connection with the Internet]:

> "… Under the hypothetical, a company seeks to register the mark tennis.net for a store that sells tennis nets.  The applicant openly states that it does no business on the Internet and has no intention to ever use the Internet.

the addition of the TLD, or the "dot com" portion of the alleged mark, SPORTSBETTING.COM, does not create a source identifier if none exists in the combined term "sports betting" or SPORTSBETTING.  *See In re Martin Container, Inc.,* 65 USPQ2d 1058 (TTAB 2002) ["[T]o the average customer seeking to buy or rent containers, CONTAINER.COM would immediately indicate a commercial website on the Internet which provides containers."].

As to the arguments by the Trademark Examining Attorney that applicant has admitted to the fact that these individual components are not registrable by disclaiming them in an earlier registration, we recognize that §6 of the Lanham Act permits an applicant to disclaim matter voluntarily – regardless of whether the matter is registrable or unregistrable.  *See In re MCI Communications Corp.*, 21 USPQ2d 1534 (Comm'r. USPTO 1991).  Applicant's

---

This hypothetical applicant's mark consists of a descriptive term — "tennis" — and a TLD — ".net."  The "net" portion alone has no source-identifying significance.  The hypothetical mark as a whole, as is immediately apparent, produces a witty double entendre relating to tennis nets, the hypothetical applicant's product.  Arguably, the attachment of the TLD to the other descriptive portion of the mark could enhance the prospects of registrability for the mark as a whole.  This hypothetical example illustrates that, although TLDs will most often not add any significant source-identifying function to a mark, a bright-line rule might foreclose registration to a mark with a TLD component that can demonstrate distinctiveness.

earlier statement (in Reg. No. 2434774) that it made no claim to the exclusive right to use the terms SPORTSBETTING and COM apart from the composite mark as shown means that as used in connection with the computer services enumerated in that particular registration, no rights are being asserted in the disclaimed component of the mark standing alone.  It is clear that a disclaimer does not preclude registrant, as a matter of law, from later demonstrating in another application, for example, rights in the disclaimed matter if it can show that the disclaimed words have, with time and use, become distinctive of such goods or services. *See* Section 6(b) of the Trademark Act, 15 U.S.C. §1056(b); *See also*, *In re K-T Zoe Furniture Inc*., *supra* at 1789. However, it has long been held that the disclaimer of a term constitutes an admission of the merely descriptive nature of that term, as applied to the goods or services in connection with which it is registered, and an acknowledgment of the lack of an exclusive right therein at the time of the disclaimer.  *See Quaker State Oil Refining Corp. v. Quaker Oil Corp*., 453 F.2d 1296, 172 USPQ 361, 363 (CCPA 1972).  *See also*, *In re Interco Inc*., 29 USPQ2d 2037, 2038 (TTAB 1993).

Finally, we agree with the Trademark Examining Attorney that in the event **SPORTSBETTING.COM** should be found not to be generic for the identified services, it is certainly merely descriptive. By definition, if merely descriptive, it is not inherently distinctive, and applicant has made no attempt to demonstrate acquired distinctiveness for this matter, so as to permit registration on the Principal Register under Section 2(f) of the Act.

*Decision*: The refusal to register the designation **SPORTSBETTING.COM** as incapable of registration under Section 23 of the Lanham Act is hereby affirmed, and registration to applicant on the Supplemental Register is denied. In the alternative, should the applied-for term be found not to be generic for the identified services, it is merely descriptive. Hence, in the absence of a showing of acquired distinctiveness, the refusal to register on the Principal Register based upon Section 2(e)(1) of the Lanham Act is hereby affirmed.